We've called the case. Somebody's invited to begin. Thank you, Your Honor. I'm Glenn Smith. I'm representing the Charles Schwab Corporation. May it please the Court, I'd like to reserve five minutes for rebuttal. Watch your own time, please. Thank you, Your Honor. The government's position in this case is that Schwab's deductions for its California franchise tax liabilities should be reduced under Section 461D. 461D applies when there has been an action by a state tax jurisdiction taken after 1960 that advances, that accelerates the accrual date of the tax from one federal taxable year to an earlier taxable year. Before I get to the demonstration that, in fact, there was no acceleration in this case, I'd like to jump to the other end of the equation and focus on what would happen to Schwab's deductions if, in fact, there were an acceleration. Because I believe I can demonstrate that, in fact, if 461D did apply to Schwab, there would be no material reduction in Schwab's deductions. Counsel, excuse me, let me just ask a question because I know that our taxes were due yesterday and this is perhaps not a favorite subject of anyone. But I'm trying to see if I can understand this case. Is this case really about reducing deductions or is it a question about which year the deduction is to be taken? Well, Your Honor, under Section 461D itself, the issue would be timing. But the way that the government and the tax court applied 461D creates a permanent difference in Schwab's tax liabilities. So this is both about timing and about permanent differences. Now, I think the appropriate place to start is the 74 words of Section 461D itself. Those appear at page 13 of our opening brief. But I have taken the liberty with the consent of government counsel of putting those words on a placard, which I would like to, with the Court's permission, to display to the Court. Chief Judge Schroeder, can you see the placard or do you want, do you need to see it? It simply quotes. I don't think I need to see it. Quotes 461D1 as far as I can see. The statute begins with the two prerequisites to its application. The first being that there be an accrual method taxpayer. You've got that right? Yes, Your Honor. The second being that there have been, that the time for accruing taxes, and the statute speaks in the present tense, those are current law taxes, to the extent that the time for accruing those taxes is earlier than it would be but for an action of a tax jurisdiction taken after 1960. Now, that's, those are the conditions for the statute to apply. But the remedy, in fact, the only remedy that section 461D provides is that in that case, the taxes are treated as accruing at the time they would have accrued under 1960 law. Just to cut to the chase, I have to say that if I were drafting that statute, I would try to draft it more clearly. But as I understand it, what it says is ignore any law, change of law after 1960 for purposes of timing of accrual. Well, yes, for purposes of time of accrual, yes, Your Honor. So just any law that, any State law after 1960, just ignore it? Any State law that changes the accrual time is to be ignored. Right. And the change in accrual time is to be ignored. Right. So that the base reference in that case is when the tax would have accrued in 1960, under 1960 law. So it forces you to match tax against revenue? Well, actually, Your Honor, it You're trying to take a greater tax backwards to create a greater deduction against lesser revenue. Isn't that what's happening? In Schwab's case, we're not, Your Honor. The statute was enacted in response to efforts of several States to create that situation with respect to their State real estate taxes. And the evil that Congress saw was that those States were allowing their citizens, their taxpayers, to manipulate the Federal accrual laws to cause the accrual of more than one year's tax in years when they had actually paid only one year's tax. And that's not our situation. Well, it seems to me you're trying to get a bigger deduction against revenue by moving the deduction from one period to the other. Well, Your Honor, I believe the answer is yes or no. I know, Your Honor, we're not. All right. Tell me how I'm confused then. I've also put on a placard the recapitulation chart that we circulated to the panel, the government panel. So you're not going to save any money if you're right at all then? Your Honor, my belief is that even if Section 461D did apply, Schwab would be entitled to the deductions it claimed during the years before the Court. If I may draw the Court's attention to the, again, to the chart that we circulated and that is on this placard. You know, it becomes an eye exam. I can't read anything on the chart from here. We have copies on the bench. I think, Judge Schroeder, do you have a copy of it? I do. I do have a copy of it. If I may direct Your Honor's attention to column B, the franchise tax, the franchise proceeds across from 1989. In 1989, Schwab incurred a franchise tax liability of $1,800,000. If one were to assume that 461D applied, then the question would be when would the 1989 tax have accrued under 1960 law because that's the only remedy that 461D seeks to apply. In 1960, as now, the franchise tax, the California tax, was in fact a franchise tax. The amount was determined by reference in 1980. If that law applied to 1989, the amount would have been determined by reference to the 1988 income, but only for purposes of determining the amount of the tax. The tax would not actually have been due, have been owed, have been payable, unless Schwab exercised its franchise throughout 1989. In fact, if Schwab had withdrawn from doing business in California midway through the state, it would have owed only a pro rata portion of the tax. So it was, in fact, a true franchise tax, not a tax on income. Under 1960 law, it's very clear that tax would have accrued on January 1st, 1989. That was the result that the tax court reached in general, as did the California tax. In the Central Investment Company case, it was specifically the date that the tax court noted in the first time we were in the tax court, which we've all referred to as Schwab 1, when in footnote 10, the court said very clearly that Schwab's 1989 tax, under 1960 law, would accrue on January 1st, 1989. The result of that date is that under the literal words of the statute, Schwab's 1989 tax, imposed due to its activities in California in 1989, would accrue under 461B on January 1st, 1989. How could that be? I don't follow that. I'm sorry. I thought it was January 1st, 1990. Because how could it accrue before they've done any business? Well, Your Honor, as an economic matter, the tax clearly accrued over the course of time that Schwab performed its activities in California. The way the statutes were arranged, it – there was a refund if the – if business were only conducted during a partial year. So economically, the State hadn't really earned the tax until the taxpayer had performed its activities over the full course of the year. Nonetheless, because the statute – because accrual was triggered by the exercise of the franchise, for Federal tax purposes, the courts have held consistently that the tax accrued at the beginning of the year in which the franchise was exercised. Now, again, there would have been a refund. Economically, the rules worked a little bit differently in terms of what tax was owed to the State. But isn't that based on the income of the previous year? Well, the amount was determined based on the previous year. But the tax itself was not owed, was not due. No liability was incurred until and as the franchise was exercised in the tax year. So in 1989, the amount of the tax under 1960 law would have been measured by a percentage of Schwab's 1988 income. I hear you arguing that the California law didn't accomplish anything. That's pretty much what you're telling us, isn't it? Well, Your Honor, California had a different motive in changing its law, and the change in law was really quite effective. Two problems had come up. One was that taxpayers, primarily real estate developers, had discovered that they could  I understand that, but I hear you saying that in this context it doesn't make any difference because before or after we would have gotten the same result. For federal tax purposes, Your Honor, I believe that's correct, literally under the statute. So you're saying that 1972 change has no effect on you. That's what 461 says, right? Yes, Your Honor. So you're trying to tell us that this is how the deduction system works for federal law purposes in accordance with the 1960 law. Okay. Yes, Your Honor. But what I don't get is, given that the accrual date under California law prior to 1972 for the taxes, for the money that you earn in 1988, the tax on the money that you earn in 1988 does not accrue until January 1, 1989, correct? Well, Your Honor, the, again, looking at the 1986 law... Is that correct? You don't like to say yes or no. Let me ask it again. You operate and earn a profit in 1988. Because you operate and earn a profit in 1988, you owe money to the State of California. But under the law as it existed in 1960, that amount owed to the State of California does not accrue until January of the following year, 1989. Isn't that correct? What's giving you the difficulty, Your Honor, is that the tax itself was not imposed on the income. The tax was imposed... You know, I just asked you... But they didn't have to pay it. The question is, when did it accrue? They didn't have to pay it until later. But when did it accrue? It accrued as of January 1 under that prior law, didn't it? The tax measured by income earned by Schwab in 1989 would have accrued on January 1, 1990. That was my question. So your answer is yes. Yes. Yes. The tax that was based on, that was actually imposed, though, on Schwab in 1989, that had to be paid in 1989, measured by 1988 income, was, in fact, accrued on January 1, 1989. And in terms of measuring when Schwab's deduction for 1989 accrued, again, the January 1 date is a good date. Wait a minute. However... You're slipping me between 88, 89, and 90. So let's say that we're talking about money that is earned during 1988. Yes, Your Honor. The franchise tax owed to the State of California on that money, that accrues on January 1, 1989, correct? Actually, Your Honor, the tax that would have accrued, measured by the income earned in 1988, would have accrued on both, would have accrued once on December 31, 1988, and then again on January 1, 1989. Where do you get the December 31, 1988 answer from? Well, in Schwab's first two years, Your Honor, the tax was based on current income. So it wasn't based on the prior year's income. It wasn't measured by prior year's income. It would have been measured by 1988. Isn't that a product of the fact that if you only work, if you only, if you're only in business for part of the year, then you don't have to pay the tax until you've been in business for a year? It was based on the fact that if, as is usually the case, there's a short taxable year. I see. Right. I guess I'm making a mistake in focusing on those years. What I want is the abstract proposition, not the specific to the partial year business. Yes, Your Honor. So let's, I'll just change years. We're talking about 91, okay? So you earn money, you earn a profit in 1991. The amount you owe to the State of California under the Franchise Tax Board System under 1960 law, that amount accrues not in 91 when you earn the money, but in January 192. Is that correct? Your Honor, it's, again, the nomenclature is difficult because the tax wasn't imposed on the income, it depended on the exercise of the franchise in the state. I understand that. I'm asking you what I thought was a simple question. Does the amount that you owe to the State of California accrue on January 1 of the following year? Your Honor, the amount you owe to the State of California. Yes. I'm having trouble why I don't get a yes or a no. You can say yes and then you can explain. You can say no and then you can explain, but I'd like a yes or a no. No, Your Honor. Okay, because? And the reason is that the tax itself was not imposed on the income. It was imposed on the doing of business in California. Yeah, but what does that have to do with the accrual date? For California purposes, there was no change in date. For federal income tax purposes, the tax was treated as accruing on January 1 of the year following the year the income was earned. Under 1960 law, it was treated as accruing at the end of the year under present law. Right. And we're dealing with earlier law because that's what 461 tells us to do. And focusing again on Schwab's 1989 year, which I believe is the crucial year, the question is, you know, when does Schwab's tax accrue for 1989? I mean, Schwab did conduct business in California in 1989. It owed the state a tax in 1989. And the question is, in 1960 or under 1960 law, what was the accrual date in 1989? And the answer is uniformly under the case law, January 1 of 1989. Under present law, that tax would accrue at the end of the year because it's actually based on income in 89. But in 1960 law, there's really no ambiguity that the tax was treated as accruing. Where are you getting that? Where do you get that, that it's the January 1st of the beginning of the year that the tax is earned, that the income is earned, that the tax accrued? Well, Your Honor, that was the result of the tax court in Central Investment Company. And in Schwab 1, the court specifically dealt with when Schwab's tax for 1989 would have accrued under 1960 law and held correctly, and put note 10 of that decision, that it would accrue on January 1st of that year. There is, however, another, I think, fundamental point that I'd like to try to address briefly, which is that in general, the purpose behind 461D was to prevent taxpayers from accruing in one year more than they had paid in tax in that year. The result of the tax court decision, its most recent decision, which was that Schwab should deduct $932,000 in 1989, was on the one hand a fiction, but on the other hand is less than the tax that Schwab actually paid in cash in 1989. Judge Gerber himself acknowledged that in his view, in his second opinion at page 15, that the statute was never intended to cause a taxpayer to lose a deduction in a year in which it had accrued, incurred the liability and paid the cash. And if the court would look to column C in the 1989 row on our chart, one can see that Schwab actually paid in cash in 1989 $1,400,000. And the cumulatively over the four years before the court, the amount of cash of tax Schwab paid in cash was equal to its liabilities. So the government, as I make it, is misapplying the statute and causing Schwab to get not even the amount of tax that it actually paid during those years. Thank you, counsel. Good morning, Your Honors. My name is Bridget Rowan from the Department of Justice for the Commissioner of Zappoli. May it please the Court to place the case in context. I would like to emphasize that this is a case all about timing and not about whether Schwab will eventually get the deductions to which it's entitled. There's no dispute about what Schwab paid or that it's entitled to franchise tax deductions. The question is the timing of the accrual. And it is, of course, the Commissioner's position that Section 461d, which is a very broadly worded and unqualified statute, states that if a State legislature has taken any action after 19 the end of 1960 to that has the effect of accelerating the accrual tax, and, of course, Schwab is an accrual basis taxpayer. He's not a cash basis taxpayer. So when it actually paid these taxes is really beside the point. The point is whether the action of the California legislature in 1972, and there have been actions since then that are not relevant, but whether the effect of those And, of course, our answer is that, in fact, it did. Under the old law, the 1960 law, as explained by the Tax Court and Central Investment, which this Court affirmed, the old California system was essentially an excise tax system, a franchise tax. It was based on the exercise of the franchise. Apparently, the California legislature was a little dubious about its ability to directly tax income. So they had set up a system whereby, and moving aside from those difficult start-up years, which caused some confusion in this case, as the Court no doubt noted, moving aside to years where the corporation is actually in ongoing operations, let's say, which was the case in Central Investment. The taxpayer there earned income in 1943. It was in operation in 1943. Then it moved on to 1944. What this Court held was, or what this Court affirmed, the tax court's holding that the franchise tax did not accrue until 1944, even though it was measured on the income of 1943, and was, you know, you could say, in essence, a tax on the income of 1943. But because it was structured as a tax on the exercise of the corporate franchise, it could not accrue until the taxpayer actually exercised the franchise by being in business in 1944. And that's why California changed its law in 1972, because under this system, if a corporation went out of business, for example, on the very last day of its income-garnering year, and was not in operation on the next year, didn't exercise the franchise, tax on that revenue would be lost. And also, if it only was in business for a few months in the franchise exercise year, the amount of tax would be prorated, so California would lose out on that. So that was the impetus behind the legislation. There was nothing abusive about it, but it did have the effect of accelerating the accrual date for Federal tax purposes, and accrual dates under Federal tax for the agency that makes the liability, leaves the liability up in the air. And under the old system, until the corporation was in business in the so-called taxable or franchise exercise year, until that contingency was closed, you didn't have a tax liability on the income for the previous year. So there was this built-in lag system. And that is how the Commissioner applies the statute, 461d1, to all accrual taxpayers in California who are paying the franchise tax. Now, California has moved with the 72 amendments and with amendments in 2000, which are not at issue in this case, but which are the subject of another revenue ruling not cited in our briefs. But they've eliminated now the distinction, actually, between the income year and the franchise. And there's nothing in 461, and there's nothing in the 1972 change of California law that changes that answer. That's absolutely right, Your Honor. Game over. That's it in a nutshell. Okay.   It would not be an issue. It would not be an issue. I think that's the way the investment controls this case. And there's no qualification in the 461d1. And the Treasury regulation that was issued pursuant to Congress's direction in 461d is, you know, is quite a broad regulation. It doesn't contain any of the restrictions or qualifications that counsel would like to counsel for the taxpayer would like to read into it. So, yes, that's that is our position on the case. Counsel, if I understand at least a portion of the appellant's brief, it suggests that the government has not always acted consistently with that position with respect to Schwab. Do you want to respond to that? I think there was some confusion about the first few years, Your Honor, the exceptional years. And they are confusing, in part because California statutes are confusing and also because of Schwab's circumstance of having first a short calendar year for California purposes and then a fiscal year for Federal purposes, which they So that was all very confusing. And the Commissioners' counsel were confused by it. And the upshot of it is that the, for the first year of operation under old law, that is an exception. And the tax actually accrues on December 31st of that year under old California law, and that statute is 23332A of the California statutes. Secondly, if the first year of operation is a short year, the second year becomes its own measuring year. So it again accrues as of December 31st of that year. Thirdly, you move on to the third year, and that's what caused all the confusion, the 1989 year. Under 23332A, again, it's the pre – that's when you start moving into the lag business. 1989, as soon as it's operating in 1989, exercise of the franchise, a tax liability arises. That tax liability is again measured by the previous year. And from that point onward, as you go into each year, you are looking back to the income of the previous year. So the first full calendar year becomes a measuring year for itself as of December 31st, and then again for the next year. So that's why you have 932 twice. And that's a – the end result of the tax court's decision is a correct application of the 1960 laws, including the exceptions. And I will state, quite frankly, the Commissioner was confused about the application of those exceptions. And in Schwab 1, it was arguing for the general rule. And the tax court held against us on that, and so that's all very well and good. That's fine. We've accepted that. As you move – once you move into 1990, it becomes clearer. Let's take 1991. You begin the year in 1991. That's a year of exercise of the franchise under the central investment case. You look back to what happened in 1990, and you take that as the amount of deductible tax for the 1991 year, and so on and so on and so on. 461d2 contains a savings provision so that to the extent that the taxpayer might lose out on some tax that actually paid under California law, they would be able to take that deduction when everything is wrapped up at the end, were they to dissolve. So you could – if you're in business for 100 years, you'll catch up at the end of 100 years? That's right. That's comforting. I'm sure. Yes. Yes. So that 1989 year, it was a very thorny year, and obviously reasonable minds got different – came to different conclusions about it. But I think it has been sorted out, and we're not – we agree that 932 should be deducted twice, once in 1988 and once in 1989. And the authority for that is 23332a of the old California law, 1960, that would have been applicable in 1960. Do you have anything else? I don't. Unless the panel has – unless there are further questions. No. Thank you, counsel. You used your time, but we'll give you a minute to respond, should you care to take it. Cases for questions should be affirmed. Thank you. Especially since you apparently survived a bark this morning on your way here. Yes, Your Honor. I had the experience of being out in downtown Oakland trying desperately to flag down a cab to get over here. Go ahead. What would you like to tell us in response? Well, two things. First, Your Honor, I believe that the government has just confirmed that January 1st, 1989 is, in fact, the accrual year for the 1989 tax. Secondly, a severe problem in Judge Gerber's opinion is that he managed – in effect, he turned a statute that has only to do with timing into a computational statute. As we saw from the words of 461d, it affects only the timing of the tax. Yet Judge Gerber held that the amount of the tax was limited to the amount that would have been computed under 1960 law. And that has the result of being not only half of the tax that actually was incurred by Schwab in 1989, but also the tax that is markedly less than the tax Schwab actually paid in cash. Isn't that what the Savings Clause is supposed to take care of? The Savings Clause itself applies only when, at the time 461d applies, that is, in this case, the amount that's deferred. Now, if 461d applied to this case, and I believe it does, then Schwab would again be entitled to the full 1,000,008, because the amount that Judge Gerber disallowed, you know, as Your Honor was pointing out, is never really going to be realized by – deductible by Schwab. Thank you, Counsel. The case just argued is ordered and submitted, and we're adjourned until tomorrow morning at 9 o'clock. Thank you.
judges: Schroeder, Trott, W. Fletcher